### WILLIAM SMITH *vs.* SHADRACH SMITH and others.

The testator directed his real and personal estate to be divided into fourteen equal parts, and devised and bequeathed one fourteenth part to his son James, disposing of the residue among his other children. By a subsequent clause in his will, the testator ordered that from the value of the estate devised and bequeathed to his children, his executors should deduct, respectively, the amount of "money heretofore paid and advanced to or for either of my said children, or to either of the husbands of my said daughters, and all other moneys and accounts in which they may be severally indebted to me at the time of my decease."

At the time of testator's death James was indebted to him.

James' share in the land devised under the will was claimed by virtue of an assignment which he had made, and also by force of a sheriff's sale under a judgment.

*Held*, that the claim of the executors to deduct the debts due the estate from James' share of the proceeds of lands sold under proceedings in partition was paramount to the rights acquired by the assignment or the sheriff's sale.

---

*Hamilton*, for the applicant.

*Linn*, for the heirs.

THE CHANCELLOR. Upon a bill for partition among the devisees of Nathan Smith, late of the county of Sussex, deceased, the land, not being susceptible of partition, was sold, in order that the proceeds might be divided under the direction of the court. The share of James Smith, one of the devisees, is claimed by William Smith, by virtue of an assignment to him from James, and an order in his favor for the payment of the money. He also claims under a sale and conveyance by virtue of a judgment and execution against James, made by the sheriff of the county of Sussex prior to the master's sale under the proceedings in partition. This claim is resisted on behalf of the other devisees under the will.

The interest of James Smith in the land and in the proceeds of the sale, whatever it may be by virtue of the sheriff's deed and of the assignment, is vested in William. The only question is, what estate, if any, in the land had James under the will of his father.

The testator directed his real and personal estate to be divided into fourteen equal parts. He devised and bequeathed to his executors five equal fourteenth parts in trust for five of his children, and one equal fourteenth part to each of his other children, including James.

By a subsequent clause in the will, the testator ordered and directed as follows, *viz.* "It is my will, and I hereby order and direct, that from the value of the share of my said estate devised and bequeathed in trust for my five children first above named, and also from the value of each of the shares of my said estate herein devised and bequeathed to my other children, my said executors deduct, respectively, the amount of money which I have heretofore paid and advanced, or may hereafter pay and advance to or for either of my said children, or to either of the husbands of my said daughters, and all other moneys and accounts in which they may be severally indebted to me at the time of my decease."

At the time of the testator's death his son James was

CASES IN CHANCERY.

indebted to him in a large amount. His share of the personal estate was retained by the executors, and divided among the other children of the testator, but not in an amount sufficient to equalize the shares under the will. A large balance was still due, for which the executors hold a judgment against him.

The provisions of the will are too clear to admit of doubt. The testator unquestionably intended that his entire estate, real and personal, should be equally divided among all his children—language cannot make it plainer. The two clauses of the will are to be taken in connection, and so read as to make one harmonious provision. He did not intend to devise one equal fourteenth of his land absolutely to each child—no matter what might be the amount of his or her indebtedness, and leave his estate to the hazard of recovering back the surplus—any more than he intended to vest absolutely in each legatee a right to one fourteenth of the personal estate. What the testator intended, and what the will effects is, to give to each legatee and devisee an equal fourteenth of the entire estate charged with the payment of his debts. The design is accomplished by including the debt of each child in the aggregate of the estate, and giving each child a share of the gross amount, less his individual indebtedness. To object that the title is in the heir, and that the executors are not empowered by the testator to sell the land or effect an equal division, is dealing with the shadow, and not with the substance. It is the duty of the executors to see that the intention of the testator is carried into effect, and that each child receives his equal share according to the provisions of the will; and if the executors lack the necessary power, this court will aid them in effectuating that purpose. Neither the want of power in the executors nor their mistakes (if any have been committed) in the settlement of the estate, nor even their wilful misconduct, will be permitted to defeat the clear intent of the testator and the legal rights of the devisees.

The land has been sold; the fund is now in court and under its control; there is no difficulty in carrying out the provisions of the will, and it is the duty of the court to dispose of the fund in accordance with that purpose. This was one of the purposes for which this proceeding was instituted. The bill was filed by William Smith, one of the devisees, and also one of the executors of the will of Nathan Smith. After reciting the provisions of the will, the bill charges that the interest of the devisees requires that a partition be made; but inasmuch as the lands were so circumstanced that a sale thereof would be necessary in order to a fair division of the estate of Nathan Smith between his children *according to the directions of his will*, and as doubts were entertained whether such division could be fairly made, except by the intervention of this court, therefore the aid of the court was invoked. The sale has been made in pursuance of that prayer. The complainant now claims the one fourteenth part of the proceeds of the sale by virtue of an individual judgment of his own against his brother. He certainly can claim no higher or better right under the judgment than the debtor himself had. He took under the will the one fourteenth subject to the payment of his debts to the estate. The proceeds of the sale of James' fourteenth must be applied first to equalize the shares of all the children of the testator, as required by the will, and the surplus, if any, must be paid to the judgment creditors.

There is nothing in the objection that the executors, as such, are not before this court. It is not necessary that they should be to enable the court to direct the disposition of the fund. That is done for the benefit of those interested in the estate who are before the court. It will be the duty of the executors to carry the direction into effect—at any rate this objection does not lie in the mouth of William Smith, who is himself one of the executors, and who is bound to see that the provisions of the will are carried into effect.